**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AARON DUPREE ALSTON,
1299 Lawless Creek Rd,
Blairs,  VA 24527,

     *Plaintiff,*

v.

UNITED STATES DEPARTMENT OF THE
NAVY; HUNG CAO, in  his
official  capacity as Acting Secretary of the Navy;
BENJAMIN C. KOHLMANN, in  his official
capacity as Assistant Secretary of the Navy for
Manpower and Reserve Affairs; and ELIZABETH
HILL, in her official capacity as Executive Director
of the Board for Correction  of Naval Records,
1000 Navy Pentagon,
Washington,  D.C. 20350,

     *Defendants*.

Civil Action No.  26-CV-1465

## COMPLAINT

Pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, et seq. ("APA") and the

Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, Plaintiff Aaron Dupree Alston brings this

action for declaratory and injunctive relief against Defendants the United States Department of the

Navy;[1] Hung Cao, in his official capacity as Acting Secretary of the Navy; Benjamin C. Kohlmann,

in his official capacity as Assistant Secretary of the Navy for Manpower and Reserve Affairs; and

Elizabeth Hill, in her official capacity as Executive Director of the Board for Correction of Naval

Records (collectively, the "Navy").

On January 24, 2019, without the assistance of counsel, Mr. Alston, a Marine Corps

veteran, applied to the Board for Correction of Naval Records ("Board" or "BCNR") to upgrade

the status of his discharge from "Other than Honorable" to "Honorable" or "General, Under

---

[1] The United States Marine Corps is a component of the United States Department of the Navy. See
https://www.uso.org/stories/3128-what-is-the-difference-between-navy-vs-marines.

Honorable Conditions" on the basis of his faithful and honest military service. The application did not include a brief or any evidence, but included a DD Form 149 with one sentence stating why Mr. Alston believed the record to be in error or unjust. The Board denied relief on March 11, 2020. On January 12, 2023, Mr. Alston submitted a request for reconsideration of the denial of his application for an upgrade in his discharge characterization. In connection with his reconsideration request, Mr. Alston presented evidence of racial discrimination he experienced by a superior during his service, his quality of service to the United States as a member of the Marine Corps, his post-discharge conduct, and Department of Defense ("DoD") guidance regarding the consideration of mitigating factors in discharge upgrades. The record clearly demonstrated mitigating facts that outweighed the minor and non-violent misconduct that led to his discharge. Nonetheless, the Board denied the reconsideration request on February 6, 2023. This suit seeks judicial review of the Board's decision.

The Navy's decisions concerning discharge-upgrade requests "are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1402 (D.C. Cir. 1995) (quoting *Chappell*, 462 U.S. at 303). Here, the Board's ruling on Mr. Alston's discharge upgrade fails the "basic procedural requiremen[t] . . . that an agency must give adequate reasons for its decisions." *Encino Motorcars*, *LLC* v. *Navarro*, 136 S. Ct. 2117, 2125 (2016). Specifically, the Board's decision is contrary to binding supplemental guidance issued by the DoD and fails to grapple with key evidence. For these reasons and others, the Board's decision should be set aside.

Mr. Alston accordingly requests that the Court (1) declare that the Board's decision is arbitrary and capricious, unsupported by substantial evidence, contrary to law, and without observance of procedure required by law, (2) set aside the decision, and (3) remand for further consideration of Mr. Alston's request under the proper legal standards. In support, Mr. Alston alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 2201–02, and may hear this action pursuant to the APA, 5 U.S.C. §§ 701–06, because Mr. Alston seeks review of final agency action for which there is no other adequate remedy.

2.      Venue in this Court is proper under 28 U.S.C. § 1391(e)(1) because Defendants are principally located in the District of Columbia and a substantial part of the events giving rise to the claim occurred in the District of Columbia.

## PARTIES

3.      Aaron Dupree Alston is a United States Marine Corps veteran. He is a citizen of the United States, resides in Virginia, and served in the Marine Corps from 1994 to 1996.

4.      Defendant the United States Department of the Navy is one of three service departments in DoD. It has responsibility for the administration, control, and operation of the United States Navy, a military organization primarily responsible for maritime security and warfare operations, and its sister service, the United States Marine Corps, a military organization primarily responsible for maritime land combined forces and operations. The civilian head of the Department of the Navy is the Secretary of the Navy.

5.      Defendant Hung Cao is the United States Acting Secretary of the Navy and is named solely in his official capacity. Mr. Cao is authorized by statute (10 U.S.C. § 1552) to act through a board of civilians to correct any military record of a former member of the Navy when doing so is necessary to correct an error or remove an injustice.

6.      Defendant Benjamin C. Kohlmann is the Assistant Secretary of the Navy for Manpower and Reserve Affairs and is named solely in his official capacity. Mr. Kohlmann exercises authority delegated by the Secretary of the Navy to accept or reject recommendations from the Board relating to applications for the correction of military records, including discharge upgrades.

7.      Defendant Elizabeth Hill is the Executive Director of the Board for Correction of Naval Records and is named solely in her official capacity. Ms. Hill exercises authority delegated by the Secretary of the Navy to administer and oversee the Board's operation.

## STATUTORY AND REGULATORY BACKGROUND

### I.      The Board's Authority to Correct Military Records

8.      Following World War II, Congress passed and the President signed legislation that provides a mechanism to amend military records where it is "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1).

9.      Subject to exceptions not relevant here, "such corrections shall be made by the Secretary [of each military branch] acting through boards of civilians." *Id.*

10.      "[E]xcept where procured by fraud," decisions of these boards are "final and conclusive on all officers of the United States." *Id*. § 1552(a)(4)-(5); *see also* 32 C.F.R. § 723.6(e) (providing that the Board is authorized to take "final corrective action" on behalf of the Secretary).

11.      Pursuant to that statutory framework, the Navy established the Board to consider and act upon correction requests of Navy service members and veterans. *See* 32 C.F.R. § 723.1 (creating Board).

12.      Reflecting Congress's desire that veterans with erroneous or unjust records have a real, available remedy, the Board's authority is broad and includes the correction of military records: (a) to change the reason for discharge to medical separation or retirement; (b) to reinstate a veteran to military service; (c) to re-characterize a veteran's less than fully honorable discharge; (d) to change the basis for a discharge; (e) to void a pass over of a candidate for promotion; (f) to establish eligibility for pay and/or retirement benefits; (g) to increase or change active-duty service time, which in some cases will create eligibility for U.S. Department of Veterans Affairs ("VA") benefits or military retirement; (h) to change adverse line of duty investigations; (i) to remove statutory bars to veterans' benefits; and (j) to take other actions as may be necessary to correct

4

material error or injustice. 10 U.S.C. § 1552(a)(1); *see also* 32 C.F.R. § 723.3(a) (describing authority of the Board to correct records).

13.     The Board operates within the Office of the Secretary of the Navy, in accordance with 10 U.S.C. § 1552. The Board consists of senior Navy civilians who are appointed and serve at the pleasure of the Secretary of the Navy. A panel consisting of at least three board members considers each application, with one member serving as the panel chair. *See* 32 C.F.R. § 723.3(e)(1).

14.     Federal regulations guide the Board's consideration of applications for correction. Among other things, the Board may obtain information from the applicant or Navy and may likewise request advisory opinions from Navy sources. *See id*. § 723.6(a). Any decision of the Board must be consistent with comments by proper naval authority. *See id*. § 723.6(e)(1)(i).

15.     A majority vote of the panel constitutes an action of the Board. 32 C.F.R. § 723.6(a)(3). When the Board denies a previously denied application without a hearing, the Board's determination must be made in writing and include a brief statement of the grounds for denial. *See id.* § 723.3(e)(3). The Board's written statement must include all the essential facts upon which the denial is based, "including, if applicable, factors required by regulation to be considered for determination of the character of and reason for discharge." *Id*. § 723.3(e)(4). Attached to the Board's statement must be "any advisory opinion considered by the Board which is not fully set out in the statement." *Id*. The Board must then promptly furnish the statement of the grounds for denial, along with any attachments, to the applicant. *See id*. § 723.3(e)(5).

## II.     DoD Guidance to Board Regarding Equity, Injustice, and Clemency

16.     On July 25, 2018, then-Under Secretary of Defense Robert Wilkie issued guidance to clarify and assist with determinations involving equity, injustice, or clemency (the "Wilkie Memo"). *See* Under Secretary of Defense for Personnel and Readiness, *Guidance to Military*

*Discharge Review Boards and Boards for Correction of Military / Naval Records Regarding Equity, Injustice, or Clemency Determinations* (July 25, 2018)[2].

17.    The Wilkie Memo centers on ideas of fairness and states that "[i]t is consistent with military custom and practice to honor sacrifices and achievements, to punish only to the extent necessary, to rehabilitate to the greatest extent possible, and to favor second chances in situations in which individuals have paid for their misdeeds." *Id*. at 1. The Wilkie Memo further requires Boards to consider that "[a]n honorable discharge characterization does not require flawless military service," and that "[m]any veterans are separated with an honorable characterization despite some relatively minor or infrequent misconduct." *Id*. at 2.

18.    The Wilkie Memo lists several factors that the Board should consider when evaluating a discharge upgrade petition, including an applicant's "[a]cceptance of responsibility, remorse, or atonement for misconduct," post-discharge conduct, "[l]etters of recommendation," "[c]haracter references," and whether the misconduct may have been because of "youthful indiscretion." *Id*. at 3. Moreover, the Wilkie Memo emphasizes that "[t]he relative severity of some misconduct can change over time," and calls out marijuana use as misconduct that Boards may view as "less severe today." *Id*. at 2.

## III.    <u>Additional Federal Policy Updates</u>

19.    The VA recently revised its policy on marijuana use to make clear that it views marijuana use as less severe today.[3] Its current policy provides that "[v]eterans will not be denied VA benefits because of marijuana use" and encourages veterans "to discuss marijuana use with their VA providers." *Id*.

20.    More generally, the federal government's attitude towards marijuana use has become less severe in recent years. For example, on October 6, 2022, former President Biden pardoned all prior federal offenses of simple possession of marijuana and proclaimed that "no one

---

[2] Available at: https://afrba-portal.cce.af.mil/app/assets/2018-Wilkie-Memo-25-Jul-2018-DRB-Guidance.pdf.
[3] U.S. Dep't of Veterans Affairs, Public Health,
https://www.publichealth.va.gov/marijuana.asp#:~:text=Some%20things%20Veteran%20need%20to,use%20with%20their%20VA%20providers (last visited March 17, 2026).

should be in jail just for using or possessing marijuana."[4] The United States military has also changed its attitude towards marijuana use in the last five years by, for example, giving "3,400 new recruits who failed a drug test on their first day a grace period to try again."[5] In particular, the "Marine Corps and Air Force . . . recently began allowing recruits a second opportunity to take drug tests."[6]

21.     Collectively, these recent revisions to federal policies make clear that marijuana is viewed as far less severe today than it was only a couple of decades ago, and that the federal government has created multiple pathways for those previously harshly punished for marijuana use to have those punishments reviewed and retracted.

## FACTUAL BACKGROUND

### I.    Mr. Alston's Military Service.

#### A.    Mr. Alston Served Honestly and Faithfully

22.     Aaron Dupree Alston was born on November 18, 1975, in Chapel Hill, North Carolina. At a young age, Mr. Alston embodied the traits of justice, dependability, and integrity, all of which inspired him to enlist as a member of the U.S. Marine Corps. Although Mr. Alston's mother wanted him to go to college after high school, Mr. Alston's heart was set on becoming a Marine and serving his country. Mr. Alston enlisted in the United States Marine Corps on July 11, 1994. He completed the four-week Marine Combat Training and five-week Field Wiring Course in November and December of 1994. His military occupational specialty ("MOS") was Field Wireman, a role involving the construction, operation, and maintenance of wire networks to link key outposts, control points, and headquarters with reliable paths for the transmission of telephone, teletype, facsimile, and digital data messages.

---

[4] The White House, Statement from President Biden on Marijuana Reform (Oct. 6, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/10/06/statement-from-president-biden-on-marijuana-reform/.

[5] Ernesto Londono, Needing Younger Workers, Federal Officials Relax Rules on Past Drug Use, N.Y. Times, Apr. 30, 2023, https://www.nytimes.com/2023/04/30/us/marijuana-drugs-federal-jobs.html.

[6] Id.

23.    During his service, Mr. Alston was deployed for six months off the coast of Bosnia to support an infantry unit and received a Sea Service Deployment Ribbon. Mr. Alston also received several awards throughout the duration of his military service, including the National Defense Service Medal, Rifle Marksmanship Badge, and Armed Forces Service Medal.

**B.    Mr. Alston Experiences Racial Discrimination by His Platoon Sergeant**

24.    When Mr. Alston first began his service as a 20-year-old man, he was one of two Marines who belonged to a racial minority in the entire platoon, alongside a third Marine who was multiracial. Mr. Alston was blamed for things because of his race. The sergeant leading Mr. Alston's platoon routinely ascribed any shortcomings to Mr. Alston and the other minority Marines, such as equipment failures or delays in task completion and execution. Even one of the corporals noticed Mr. Alston was repeatedly blamed for things because of his race. When a Black staff sergeant joined the platoon, the discriminatory treatment somewhat improved. However, this staff sergeant left the battalion approximately one year into a four-year role, and by that point, Mr. Alston had already suffered severe racial abuse and harassment. Despite the racial abuse, Mr. Alston did not want to cause further issues with the sergeant and chose to endure the mistreatment in silence.

25.    Feeling frustrated and stressed as a result of the racial mistreatment, Mr. Alston turned to marijuana on the weekends during his free time to ease his mind. In or around 1996, Mr. Alston failed a drug test and consequently received non-judicial punishment ("NJP") for a violation of Uniform Code of Military Justice ("UCMJ") Article 112a for wrongful use of a controlled substance. Mr. Alston was discharged on November 26, 1996, under "Other than Honorable" conditions with the narrative reason for separation as "Misconduct."

**II.    Since His Discharge, Mr. Alston Has Lived an Exemplary Life Defined by Commitment to His Family and Community.**

26.    Despite his stigmatizing discharge, Mr. Alston picked himself up following discharge, never made excuses, and worked hard to be a productive member of society. He has been employed as a technician by multiple major cable and phone companies, including AT&T,

DirecTV, Comcast, Time Warner/Spectrum and Shentel, where he has regularly received compliments from employers and customers for his work. For instance, one of Shentel's customers sent an email to Shentel's customer center to thank Mr. Alston and give him the credit that he deserves. Specifically, the customer stated, "[Mr. Alston] was very cordial and professional and even took a minute to interact with my two toddlers that were running around and asking him what he was doing…He also took the time to call into the service center to confirm that our account was owed a credit for the difference in the service provided. He is an outstanding employee!" Additionally, one of AT&T's customers called the Technical Support Team to thank Mr. Alston, saying that: "As if it were not for his caring and attention, we would not have known the line was hanging [by] a thread and to call the power company…[Mr. Alston] was polite and professional and thanks once again."

27.     In addition to working as a professional technician, Mr. Alston also continued to invest in his career development by completing ten training courses from Adelphia and Comcast to further enhance his expertise in telecommunications systems. He currently works in telecommunications for the City of Danville, Virginia, and has been employed in this role for the past seven years. His duties in this capacity include planning, designing, and maintaining the city's telecom fibers in order to reliably provide telecommunications services to buildings and companies in the city. As an employee in this role, Mr. Alston has been a respected employee at the City of Danville, as evidenced by the character reference letter his supervisor, who has worked with Mr. Alston for the past six years, wrote. In the letter, the supervisor states that: "[t]hroughout the time I have known [Mr. Alston], I have formed a very positive opinion of him. [Mr. Alston] has always been honest, helpful, and considerate of others. Not only do I like [Mr. Alston], I also respect him greatly."

28.     Beyond his successful track record as a professional technician, Mr. Alston also maintains stable family relationships and is a beloved family member. Mr. Alston has been married for 16 years and has two adult children and two grandchildren. His mother describes him as well-mannered, thoughtful, and very family-oriented, noting that he always makes time to get his family

together. Mr. Alston's aunt describes him as a man with unwavering honor for his country, a compassionate fellow human being, and perseverant. Mr. Alston's extended family member, a retired First Class Sergeant, has stated: "I know [Mr. Alston] to be an honest, loving, respectful, dependable, and productive member of society [who] not only shows up to work every day that he is scheduled but is an excellent employee at his place of employment. [Mr. Alston] is committed to being able to provide the necessary mental, spiritual, and financial support needed for his family's wellbeing."

29.     Mr. Alston has also encouraged his children to join the U.S. Air Force ("USAF"). Indeed, his stepdaughter Jasmine M. Wilson served in the USAF from 2009 until she medically retired in February 2021. Ms. Wilson, who has known Mr. Alston for over 24 years, stated: "Mr. Alston is one of the reasons why I chose to join the USAF and to go on and serve for 12 years honorably. He always encouraged me to be great and instilled in me the values that he had learned during his time serving in the U.S. Marine Corps." She further describes Mr. Alston as "dependable and has always been honest with me in every situation."

30.     Mr. Alston deeply regrets his brief marijuana use during a difficult time in his life as a young man navigating disparate treatment in the Marine Corps. He acknowledges that his actions were in conflict with Marine Corps policies of discipline and that while using marijuana temporarily eased his mind from dealing with a supervisor subjecting him to racist treatment, doing so was a lapse in judgment and did not align with the Marine Corps' values.

## PROCEDURAL BACKGROUND

I.     **Mr. Alston's Discharge-Upgrade Request to the Board and Request for Reconsideration**

31.     On January 24, 2019, without the assistance of counsel, Mr. Alston applied to the Board and requested that his "Other than Honorable" discharge be upgraded to "Honorable" or "General Under Honorable Conditions." Mr. Alston explained that due to his age at the time of his discharge, he was young and did not fully contemplate the consequences of his discharge. The Board denied his application on March 11, 2020, due to the paperwork being filed incorrectly.

32.     On January 12, 2023, Mr. Alston submitted a request for reconsideration of his application for an upgrade in his discharge characterization. In support of his request, Mr. Alston requested an upgrade pursuant to the Wilkie Memo. Specifically, Mr. Alston argued that many, if not most, of the Section 6 principles and Section 7 factors of the Wilkie Memo overwhelmingly favor a discharge upgrade based on: (1) his quality of service to the United States as a member of the Marine Corps; (2) his positive post-discharge conduct; and (3) the racial discrimination he experienced from his superior, all of which mitigate the severity of his misconduct. Mr. Alston also argued that while marijuana use is still unlawful in the military, it is now legal under state law in some states and it may be viewed, in the context of mitigating evidence, as less severe today than it was decades ago, pursuant to guidance under the Wilkie Memo.

## II.     The Board's Letter Denying Mr. Alston's Upgrade Request

33.     The Board issued a letter on February 6, 2023, denying Mr. Alston's request. The Board began its letter by describing certain mitigating factors in Mr. Alston's case. However, the Board ultimately concluded that the mitigation evidence Mr. Alston provided was "insufficient to outweigh the seriousness of [his] misconduct." Therefore, the Board determined that Mr. Alston's request did not merit relief.

34.     The Board's decision is flawed for several reasons.

35.     The Board's decision is founded upon the argument that because marijuana use remains against Department of Defense regulations, the offense is not less severe despite marijuana being legal in several states. However, the Board's conclusion contradicts the Wilkie Memo's principle that "[t]he relative severity of some misconduct can change over time, thereby changing the relative weight of the misconduct in the case of the mitigating evidence in a case." In describing this principle, the Wilkie Memo explicitly references marijuana use.

36.     The Board gave no weight to Mr. Alston's experience of racial discrimination by a superior on the grounds that Mr. Alston failed to raise this issue during his administrative separation and his previous discharge upgrade petition, which he filed *pro se*. However, the

11

Board's rationale contravenes the Wilkie Memo's principles that "[e]vidence in support of relief may come from sources other than a veteran's service record" and "[a] veteran or Service member's sworn testimony alone, oral or written, may establish the existence of a fact supportive of relief." Moreover, the Wilkie Memo states that "[r]elief is generally more appropriate for nonviolent offenses than violent offenses." Mr. Alston's self-medication with marijuana was not violent.

37.    The Board failed to consider the Wilkie Memo's principles that "[r]elief should not be reserved only for those with exceptional aptitude" and that "character and rehabilitation should weigh more heavily than achievement alone." The Board based its decision on the purported seriousness of Mr. Alston's conduct and the possible negative impact his conduct had on his command, rather than the substantial post-discharge evidence Mr. Alston submitted illustrating his good character and rehabilitation.

38.    For the above reasons, the Board's decision is arbitrary and capricious, contrary to law, and unsupported by substantial evidence.

39.    The Board's decision should be set aside for these reasons.

## FIRST CLAIM FOR RELIEF
### (Violation of APA)

40.    The above paragraphs are incorporated herein by reference.

41.    "One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016). Under that standard, agency action is unlawful if the agency fails to articulate a rational connection between the facts found and the choice made, fails to consider an important aspect of the problem, or offers an explanation for its decision that runs counter to the evidence. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

42.    The Board's decision is unlawful for two independent reasons.

43.    *First*, the Board's decision fails to provide a reasoned explanation for the action taken. While the Board states that Mr. Alston's misconduct outweighed his mitigating factors, it

fails to provide reasoning as to why that is so. The Board's decision fails to grapple with the fact that Mr. Alston's only misconduct was a single positive test for marijuana and Mr. Alston's statement that he used marijuana to ease his mind from the stress of dealing with racial discrimination from a superior. The Board also failed to meaningfully consider the substantial post-discharge evidence, including the fact that Mr. Alston stopped using marijuana in 2000— over 20 years ago—and has since become a contributing member of society, as demonstrated by his work as a technician and his dedication as a family member. The Board failed to explain why a single instance of marijuana use outweighed years of positive post-discharge conduct.

44.    *Second*, the Board's decision is arbitrary and capricious because it fails to follow DoD's clarifying guidance. Specifically, the Board failed to consider that, according to the Wilkie Memo, offenses involving marijuana "may be viewed, in [the] context of mitigating evidence, as less severe today than it was decades ago." Instead, the Board arbitrarily and capriciously concluded that the severity of a *single* positive test for marijuana outweighed Mr. Alston's experience of racial discrimination and his post-discharge conduct. Moreover, the Wilkie Memo expressly requires the Board to consider that "[a]n honorable discharge characterization does not require flawless military service," and that "[m]any veterans are separated with an honorable characterization despite some relatively minor or infrequent misconduct." The Board failed to do so.

45.    Additionally, contrary to the requirements in the Wilkie Memo, the Board's decision fails to account for Mr. Alston's acceptance of responsibility for his misconduct and his youthful age at the time of his misconduct. Mr. Alston's positive drug test happened when he was only around 20 years old. Mr. Alston deeply regrets using marijuana to subdue his frustrations with dealing with racial discrimination and accepts full responsibility for his actions.

46.    In light of the foregoing, the Board's decision should be set aside.

## **RELIEF REQUESTED**

WHEREFORE, Mr. Alston respectfully requests that this Court issue judgment in his favor and against Defendants, and grant the following relief:

13

A. Vacate the Board's denial of Mr. Alston's application for a discharge upgrade;

B. Declare that the Board's decision to deny his application was arbitrary, capricious, unsupported by substantial evidence, and contrary to law under the APA;

C. Vacate and remand the BCNR decision with instructions to apply the proper legal standards in assessing Mr. Alston's claims;

D. Award Plaintiff costs and attorneys' fees:

E. Award such further relief as this Court deems just and proper.

Dated: April 28, 2026

Respectfully submitted,

/s/ Alec W. Farr

Rochelle Bobroff (DC Bar No. 420892)
Abigail Reynolds (DC Bar No. 1735880)
NATIONAL VETERANS LEGAL
SERVICES PROGRAM
1100 Wilson Blvd, Suite 900
Arlington, VA 22209
Rochelle@nvlsp.org
Abigail@nvlsp.org
Phone: 202-621-5709

Alec W. Farr (DC Bar No. 440046)
Perkins Coie LLP
700 13th Street NW #600
Washington, DC 20005
(202) 434-1603
AFarr@perkinscoie.com

Kaneem A. Thornton (Pro Hac Vice pending)
Perkins Coie LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
(415) 344-7038
KaneemThornton@perkinscoie.com

*Counsel for Plaintiff*